UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Peleus Insurance Company, on its own behalf and
o/b/o 57th Avenue Associates,

                              Plaintiff,

              -against-

American European Insurance Company,

                              Defendant.*
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-CV-03453 (DG) (RML)

DIANE GUJARATI, United States District Judge:

On May 8, 2023, Plaintiff Peleus Insurance Company ("Peleus"), on its own behalf and

on behalf of 57th Avenue Associates ("57th Avenue"), commenced this action against Defendant

American European Insurance Company ("AEIC") seeking declaratory relief.  *See* Complaint

("Compl."), ECF No. 1.[1]  This action arises from an insurance coverage dispute between

Plaintiff, an insurance company for 57th Avenue, and Defendant, an insurance company for 21st

Century Pharmacy Inc. ("21st Century"), as to claims in an underlying state court action, *Blossom*

*Miller v. 57th Avenue Associates and 21st Century Pharmacy Inc.*, filed in the Supreme Court of

the State of New York, County of Kings, Index Number 502832/2022 (the "Miller Action").  *See*

*generally* Compl.  Plaintiff seeks, *inter alia*, a declaration that Defendant is obligated to defend,

indemnify, and afford coverage on a primary and non-contributory basis to 57th Avenue in

connection with the Miller Action.  *See* Compl. at 7-11.

On June 30, 2023, Defendant filed an Answer and counterclaims, seeking certain

declaratory relief, including a declaration that Defendant has no obligation to defend or

---

\*  The Clerk of Court is directed to amend the caption as set forth above.

[1]  Familiarity with the procedural history and background of this action is assumed herein.

indemnify 57th Avenue as to the claims arising from the accident asserted in the Miller Action. *See* Answer, ECF No. 8.  On July 20, 2023, Plaintiff filed an Answer to Defendant's counterclaims.  *See* ECF No. 11.

Pending before the Court are (1) Plaintiff's Motion for Partial Summary Judgment and (2) Defendant's Cross-Motion for Summary Judgment.  *See* Plaintiff's Motion for Partial Summary Judgment ("Pl. Motion"), ECF No. 29; Plaintiff's Memorandum of Law ("Pl. Br."), ECF No. 29-16; Plaintiff's Local Civil Rule 56.1 Statement ("Pl. 56.1"), ECF No. 29-17; Plaintiff's Opposition to Defendant's Motion and Plaintiff's Reply ("Pl. Opp. & Reply"), ECF No. 30; Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement and Plaintiff's Statement of Additional Material Facts, ECF No. 30-1; Defendant's Cross-Motion for Summary Judgment, ECF No. 24 ("Def. Motion"); Defendant's Opposition to Plaintiff's Motion and Defendant's Memorandum of Law ("Def. Br."), ECF No. 24-1; Defendant's Local Civil Rule 56.1 Statement ("Def. 56.1"), ECF No. 24-5; Defendant's Response to Plaintiff's Local Civil Rule 56.1 Statement, ECF No. 24-20; Defendant's Reply, ECF No. 26; Defendant's Response to Plaintiff's Statement of Additional Material Facts, ECF No. 26-1.

As set forth below, Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part and Defendant's Cross-Motion for Summary Judgment is granted in part and denied in part.

# BACKGROUND

I. **Relevant Factual Background[2]**

A. **The Miller Action**

At all relevant times, 57th Avenue owned certain premises located at 96-05 57th Avenue, Corona, New York (the "Premises") and 21st Century was a tenant of the Premises.  *See* Pl. 56.1 ¶ 11; Lease, ECF No. 29-6.[3]

On or about January 28, 2022, Blossom Miller ("Miller") commenced the Miller Action. *See* Miller Action Summons and Complaint ("Miller Compl."), ECF No. 29-7; *see also* Pl. 56.1 ¶ 15; Def. 56.1 ¶ 12.[4]  In the Miller Action, Miller alleges, *inter alia*, that "she was caused to trip, fall and sustain serious and permanent injuries as a result of the negligence of the defendants" and that "the defendants, their agents, servants and/or employees were negligent, reckless and careless in the ownership, operation, creation, maintenance, possession, control, supervision, direction, repair, construction and management" of the Premises.  *See* Miller Compl. ¶¶ 30-31; *see also* Pl. 56.1 ¶ 18.

---

[2]  In light of the substantial overlap between the parties' respective motions, the Court sets forth the facts together here and does not in all instances note minor discrepancies.  The Court has, however, considered any such discrepancies and has considered each motion on its own merits.

[3]  Any citation to the parties' Rule 56.1 Statements incorporates by reference the documents cited therein.  Each party has submitted its own set of exhibits in connection with its respective motion.  Where the Court refers to particular exhibits that were submitted by both parties, the Court refers to the exhibits submitted by Plaintiff, ECF Nos. 29-3 to 29-15.  The Court uses the page numbers generated by the Court's electronic case filing system ("ECF") when referring to the exhibits.

[4]  In addition to the Miller Action filed on or about January 28, 2022, Miller commenced an action on June 23, 2021 in the Supreme Court of the State of New York, County of Kings, *Blossom Miller v. 57th Avenue Associates and 21st Century Pharmacy Inc.*, Index Number 515421/2021.  *See* Def. 56.1 ¶ 12.

**B.      The Lease and Relevant Insurance Policies**

**1.      57th Avenue/21st Century Lease**

In January 2013, 57th Avenue, as owner, leased the Premises to 21st Century, as tenant, by a written Standard Form of Store Lease (the "Lease").  *See* Lease; *see also* Pl. 56.1 ¶ 11.  The Lease is signed by Charles Ingber on behalf of 57th Avenue and by Albert Alishayev on behalf of 21st Century.  *See* Lease; *see also* Pl. 56.1 ¶ 12.

The Lease required 21st Century to obtain insurance for the benefit of the lessor, 57th Avenue.  *See* Lease § 8 (Tenant's Liability Insurance Property Loss, Damage, Indemnity), § 48 (Insurance).  The Lease also set forth the responsibilities and obligations of 57th Avenue and 21st Century with respect to repairs and maintenance of the Premises and sidewalks adjacent to the Premises.  *See* Lease § 4 (Repair), § 30 (Elevators, Heat, Cleaning), § 50 (Repairs and Maintenance).

**2.      Peleus Insurance Policy**

Plaintiff issued a commercial general liability policy of insurance to "Charles Ingber ETAL" for the policy period of August 30, 2020 to August 30, 2021 (the "Peleus Policy").  *See* Peleus Policy at 7, 9, ECF No. 29-3; *see also* Pl. 56.1 ¶ 1.  The Peleus Policy identifies "Charles Ingber ETAL" as the "Named Insured."  *See* Peleus Policy at 7, 9.

The Peleus Policy provides primary coverage to insureds on the Peleus Policy, except that the coverage is excess over "[a]ny other primary insurance available to an insured covering liability for damages arising out of premises for which that insured has been added as an additional insured."  *See* Pl. 56.1 ¶ 2.  The Peleus Policy does not provide additional insured coverage to any person or organization through an endorsement or otherwise.  *See generally* Peleus Policy.

### 3.    AEIC Insurance Policies

Defendant issued a businessowners policy of insurance (the "AEIC Policy") and an

umbrella policy (the "AEIC Umbrella Policy") to 21st Century for the policy period of March 16,

2020 to March 16, 2021 (together, the "AEIC Policies").  *See* Def. 56.1 ¶¶ 1-2; *see also* Pl. 56.1

¶ 5.  The AEIC Policy identifies 21st Century as the "Named Insured" and "96-05 57 AVE

CORONA NY 11368-9999" as the insured location.  *See* AEIC Policy at 4, ECF No. 29-4.  The

AEIC Umbrella Policy reflects that the "Named Insured and Address" is "21ST CENTURY

PHARMACY INC 95-05 57 AVE CORONA NY 11368."  *See* AEIC Umbrella Policy at 3, ECF

No. 24-7.

The AEIC Policy obligates Defendant to defend an insured against a lawsuit seeking

damages for bodily injury even if the allegations of the lawsuit are groundless, false, or

fraudulent, provided that the bodily injury was caused by an "occurrence" and the bodily injury

occurred during the policy period of the AEIC Policy.  *See* Pl. 56.1 ¶ 6; *see also* AEIC Policy at

39, 82.

The AEIC Policy includes an endorsement titled "Additional Insured – Managers or

Lessors of Premises" (the "Additional Insured Endorsement"), which amends the AEIC Policy to

include as an insured the person or organization identified in the Schedule to the Additional

Insured Endorsement, "but only with respect to liability arising out of the ownership,

maintenance or use of that part of the premises leased to [21st Century] and shown in the

Schedule."  *See* Pl. 56.1 ¶ 7; *see also* AEIC Policy at 84; Def. 56.1 ¶ 4.  The Schedule to the

Additional Insured Endorsement contains a section with the header "Designation Of Premises

(Part Leased To You)" and a section with the header "Name Of Person Or Organization

(Additional Insured)."  *See* Def. 56.1 ¶ 4; AEIC Policy at 84.  Both sections are blank.  *See* Def.

56.1 ¶ 4; AEIC Policy at 84; Pl. 56.1 ¶ 8.  The Schedule states that "[i]nformation required to complete this Schedule, if not shown above, will be shown in the Declarations."  *See* Def. 56.1 ¶ 4; AEIC Policy at 84.

The Declarations of the AEIC Policy (the "Declarations") identify the insured location as the Premises and identify Charles Ingber as "Mortgage/Loss Payable/Additional Interest."  *See* AEIC Policy at 4 (reflecting an address of "40-06 warren street ELMHURST NY 11373" for Ingber).  The Declarations do not contain an additional insured provision or identify any person or organization as an additional insured. *See* AEIC Policy at 4-8.

Pursuant to the terms of the AEIC Policy, business liability coverage is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." *See* AEIC Policy at 55-56, 82.

### C.    The Insurance Coverage Dispute

By letter dated April 26, 2022, Plaintiff demanded that Defendant agree to defend and indemnify 57th Avenue as an additional insured on the AEIC Policy for the Miller Action.  *See* Pl. 56.1 ¶ 20.  By letter dated April 27, 2022, Defendant acknowledged receipt of the April 26, 2022 correspondence.  *See* Pl. 56.1 ¶ 21.

Following several demands by Plaintiff, Defendant denied additional insured coverage to 57th Avenue by correspondence dated July 14, 2022, because "the plaintiff indicates she was injured after she tripped on a structural defect in the sidewalk and fell."  *See* Pl. 56.1 ¶¶ 22-24.

By correspondence dated September 8, 2022, Plaintiff again demanded that Defendant agree to defend and indemnify 57th Avenue.  *See* Pl. 56.1 ¶ 26.  By letter dated September 19, 2022, Defendant, by its counsel, issued another denial of additional insured coverage for 57th

Avenue.  *See* Pl. 56.1 ¶ 27.  Specifically, Defendant denied additional insured coverage to 57th Avenue "on the grounds that the Lease requires 57th Avenue to maintain the structural condition of the sidewalk and 21st Century is responsible only for the non-structural condition of the sidewalk; 57th Avenue is not listed as an additional insured on [the Additional Insured Endorsement]; and based upon the exclusion to [the Additional Insured Endorsement]."  *See* Pl. 56.1 ¶ 28.  The September 19, 2022 letter also tendered to Plaintiff the defense and indemnification of 21st Century.  *See* Def. 56.1 ¶ 21.

Plaintiff thereafter commenced the instant action seeking defense, indemnity, and additional insured coverage from Defendant under the AEIC Policies on a primary and non-contributory basis on behalf of 57th Avenue as it pertains to the claims asserted in the Miller Action.  *See* Def. 56.1 ¶ 22.

## II.    Procedural Background and the Instant Motions

On May 8, 2023, Plaintiff filed the Complaint.  *See* Compl.  On June 30, 2023, Defendant filed an Answer and counterclaims.  *See* Answer.  On July 20, 2023, Plaintiff filed an Answer to Defendant's counterclaims.  *See* ECF No. 11.  On July 3, 2024, discovery closed.  *See* July 3, 2024 Order.  On October 24, 2024, the Court held a pre-motion conference in connection with the parties' anticipated motions for summary judgment.  *See* October 24, 2024 Minute Entry. Thereafter, Plaintiff filed its Partial Motion for Summary Judgment and Defendant filed its Cross-Motion for Summary Judgment.  *See* ECF Nos. 24, 26, 29, 30.  Subsequently, Defendant filed a supplemental letter and Plaintiff filed a response to the supplemental letter.  *See* ECF Nos. 31, 32.

In its Partial Motion for Summary Judgment, Plaintiff seeks a declaration that (1) Defendant owes a duty to defend 57th Avenue, on the AEIC Policy issued to 21st Century, against

the Miller Action; (2) Defendant is precluded from relying upon any exclusion, condition, or limitation to coverage in the AEIC Policy as Defendant breached New York Insurance Law § 3420(d); (3) the AEIC Policy provides defense coverage to 57th Avenue that is primary to and non-contributory with any coverage available to it from Plaintiff; (4) and Defendant must reimburse all attorney's fees and costs incurred by Plaintiff to defend 57th Avenue against the Miller Action, with statutory interest.  *See* Pl. Motion at 1; Pl. Br. at 1.

Plaintiff argues, *inter alia*, that the unambiguous terms of the AEIC Policy and the undisputed facts establish, as a matter of law, that 57th Avenue is entitled to additional insured defense coverage on the AEIC Policy for the Miller Action, and that Defendant's duty to defend is primary to and non-contributory with any coverage available to 57th Avenue on the Peleus Policy.  *See* Pl. Br. at 6.  Specifically, Plaintiff argues that although Defendant asserts that 57th Avenue is not an additional insured because it is not listed as an additional insured on the Additional Insured Endorsement, the intent of that endorsement is to extend additional insured coverage to 21st Century's lessor, reflected by the title and language of the Additional Insured Endorsement, as well as the identification of 57th Avenue's principal (Ingber) and 96-05 57th Avenue, Corona, New York as the address for premises leased to 21st Century, *see* Pl. Br. at 9, and that the allegations of the pleadings in the Miller Action, coupled with 21st Century's obligations in the Lease, suggested a reasonable possibility that there is additional insured coverage for 57th Avenue on the AEIC Policy for the Miller Action, which triggered Defendant's duty to defend 57th Avenue at the time Plaintiff demanded that Defendant provide that coverage, *see* Pl. Br. at 11.

Plaintiff also argues that the AEIC Policy should be reformed to identify 57th Avenue as the lessor of the Premises and an additional insured pursuant to the terms of the Additional

Insured Endorsement, *see* Pl. Br. at 11; that Defendant should have accepted Plaintiff's demand and assumed the defense of 57th Avenue, *see* Pl. Br. at 11; that Defendant cannot rely upon any exclusions, conditions, or limitations to coverage in the AEIC Policy to avoid Defendant's additional insured coverage obligations to 57th Avenue for the Miller Action as Defendant breached New York Insurance Law § 3420(d), *see* Pl. Br. at 14; that Defendant must reimburse Plaintiff the costs and fees incurred to defend 57th Avenue against the Miller Action, *see* Pl. Br. at 16; and that 21st Century is not an additional insured on the Peleus Policy as there is no additional insured coverage on the Peleus Policy for any entity, *see* Pl. Br. at 17.

In its Cross-Motion for Summary Judgment, Defendant seeks a declaration granting all of Defendant's counterclaims. *See* Def. Motion at 1-2; Def. Br. at 1. Defendant's counterclaims seek a declaration (1) that the Peleus Policy affords coverage to 21st Century pursuant to the Lease, (2) that any coverage afforded by Defendant is excess to the coverage afforded by Plaintiff, and (3) that Defendant has no duty, under the AEIC Policies, to defend, indemnify, and/or provide additional insured coverage to 57th Avenue with respect to the claims asserted in the Miller Action. *See* Def. Br. at 1, 3-4; *see also* Answer at 11-12.

Defendant argues, *inter alia*, that the AEIC Policies are clear that 57th Avenue is not an insured under the AEIC Policies and 57th Avenue is entitled to no coverage, either for defense or indemnity, as to any lawsuit or claim. *See* Def. Br. at 1. Specifically, Defendant argues that Defendant did not agree to insure 57th Avenue in any respect much less for 57th Avenue's own conduct independent of the store rented to 21st Century; that it is a matter of documentary evidence that 57th Avenue is not entitled to defense or indemnity under the AEIC Policies because 57th Avenue is not named as an insured under the AEIC Policies and specifically is not entitled to additional insured coverage pursuant to the Additional Insured Endorsement; that the

dispositive fact is that 57th Avenue is neither named in the endorsement nor in the Declarations as an additional insured; and that Plaintiff failed to prove any basis for coverage under the AEIC Policies.  *See* Def. Br. at 2.

Defendant also argues that Plaintiff lacks standing to seek a reformation of the AEIC Policies because Plaintiff is not a party to the AEIC Policies and does not present any evidence from a person with knowledge as to the purchase of the AEIC Policies to prove mutual mistake or fraud as a basis for reformation, *see* Def. Br. at 9; that Plaintiff's argument with respect to primary and non-contributory coverage is moot because Plaintiff has not proven the requirements of the AEIC Policies for additional insured coverage for 57th Avenue as to the claims against it in the Miller Action, *see* Def. Br. at 14; that Plaintiff, as the insurer for the entity responsible for the defective condition, must indemnify 21st Century on a primary basis and reimburse Defendant for all costs and expenses, *see* Def. Br. at 14; that there is no waiver or estoppel in telling an entity that is not an insured under the AEIC Policies that it is not an insured under the AEIC Policies, *see* Def. Br. at 14; and that the denial of coverage by Defendant to 57th Avenue was proper, *see* Def. Br. at 14.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the [summary judgment] motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Liberty Lobby, Inc.*, 477 U.S. at 256; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party meets its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."  *See Brandon v. Royce*, 102 F.4th 47, 54-55 (2d Cir. 2024) (quotation omitted).  The nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted), by offering "concrete evidence from which a reasonable juror could return a verdict in his favor," *Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 256).  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Bald assertions, completely unsupported by evidence, do not satisfy the opposing party's burden.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).  And "speculation alone is insufficient to defeat a motion for summary judgment."  *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006); *see also Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (noting that "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact" (ellipsis and quotation omitted)).

Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quotation omitted).

In deciding a motion for summary judgment, a district court properly considers only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "In determining whether summary judgment is appropriate, [a court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). A district court "is duty bound not to weigh evidence or assess the credibility of witnesses." *Smith v. DeGirolamo*, No. 17-CV-05532, 2020 WL 5752226, at *3 (E.D.N.Y. Sept. 25, 2020) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)); *see also Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, No. 23-7544-cv, 2025 WL 1813025, at *10, 13 (2d Cir. July 2, 2025).

When parties cross move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quotation omitted); *see also Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 (2d Cir. 2023).

## DISCUSSION

As set forth below, Plaintiff's Motion for Partial Summary Judgment is granted in part

and denied in part and Defendant's Cross-Motion for Summary Judgment is granted in part and denied in part.

## I.    Declaratory Judgment

For the reasons set forth below, the Court exercises jurisdiction over the claims and counterclaims for declaratory judgment.

### A.    Applicable Law

The Federal Declaratory Judgment Act ("DJA") provides, in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  "In other words, the DJA creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy."  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (quotation omitted).

District courts "retain 'broad discretion' to decline jurisdiction under the DJA."  *Id.* at 99 (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012)).  The  United States Court of Appeals for the Second Circuit has stated that the following considerations, to the extent they are relevant in a particular case, should inform a district court's exercise of such discretion: "(1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between

sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction." *See id.* at 99-100 (alterations accepted) (quotations and citations omitted).  District courts have "broad discretion to weigh" these factors and "no one factor is sufficient, by itself, to mandate that a district court exercise – or decline to exercise – its jurisdiction to issue a declaratory judgment." *See id.* at 100.  "[T]hese factors are non-exhaustive, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether the normal principle that federal courts should adjudicate claims over which they have jurisdiction should yield to considerations of practicality and wise judicial administration in a particular case." *Id.* (alterations accepted) (quotations and citations omitted).  "Courts generally reject a DJA claim when other claims in the suit will resolve the same issues." *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) (collecting cases); *see also Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08-CV-10580, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) (finding that "declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim").

### B.    The Court Exercises Jurisdiction Over the Claims and Counterclaims for Declaratory Judgment

Upon consideration of the relevant factors, the Court exercises jurisdiction over the claims and counterclaims for declaratory judgment.[5]  Here, declaratory judgment will serve a useful purpose in clarifying or settling the legal issues involved; a declaratory judgment will finalize the controversy as to Defendant's responsibility to defend and indemnify 57th Avenue for

---

[5]    No party opposes the exercise of jurisdiction and, indeed, both parties request declaratory relief.

claims in the Miller Action and offer relief from uncertainty; there is no indication that the parties have sought to invoke this Court's jurisdiction for "procedural fencing or a race to res judicata;" the use of a declaratory judgment in this case will not increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; there is not a better or more effective remedy; and concerns for judicial efficiency and judicial economy do not favor declining to exercise jurisdiction. *See Admiral Ins. Co.*, 57 F.4th at 99-100; *see, e.g.*, *Falls Lake Nat'l Ins. Co. v. Kalnitech Constr. Corp.*, 774 F. Supp. 3d 456, 468 (E.D.N.Y. 2025).

## II.    57th Avenue Is Not Entitled to Additional Insured Coverage Under the AEIC Policies

Here, the central issue on which the instant Motions turn is whether 57th Avenue qualifies as an additional insured under the AEIC Policies. For the reasons set forth below, the Court has determined that 57th Avenue does not qualify as an additional insured under the AEIC Policies and therefore, with respect to the Miller Action, Defendant has no duty to defend, indemnify, and/or provide additional insured coverage to 57th Avenue under the AEIC Policies.[6] There is no genuine dispute of material fact with respect to this issue.

### A.    Applicable Law

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *See Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quotation omitted); *see also Mikaelian v. Liberty Mut. Ins.*, No. 15-CV-06182, 2016 WL 4702106, at *3 (E.D.N.Y. Sept. 8, 2016)

---

[6]   Because 57th Avenue is not entitled to coverage under the AEIC Policies, the Court need not – and does not – reach the issues of, *inter alia*, whether coverage is primary or excess and whether Defendant breached New York Insurance Law § 3420(d) and thus is precluded from relying upon any exclusion, condition, or limitation to coverage in the AEIC Policies.

(noting that "contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense" (quotation omitted)).[7]  "The initial interpretation of a contract is a matter of law for the court to decide."  *Morgan Stanley Grp. Inc.*, 225 F.3d at 275 (alteration accepted) (quotations omitted); *see also Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).  "Part of this threshold interpretation is the question of whether the terms of the insurance contract are ambiguous."  *Morgan Stanley Grp. Inc.*, 225 F.3d at 275.

"An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Id.* (quotation omitted); *see also Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (noting that "the language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement").

Generally, "in assessing whether a contract is ambiguous, a court looks within only the four corners of the document; extrinsic or parole evidence is usually not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."  *See Ezrasons, Inc.*, 89 F.4th at 395 (quotation omitted).  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the

---

[7]    The parties appear to agree that New York law applies to the AEIC Policies and the Peleus Policy.  *See, e.g.*, Pl. Br. at 6-7; Def. Br. at 8.

litigation." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quotation omitted).

Where the contractual language is unambiguous, "the district court [may] construe it as a matter of law and grant summary judgment accordingly." *See Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quotation omitted); *see also Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (stating that "[s]ummary judgment is appropriate if the terms of the contract are unambiguous"); *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (noting that a motion for summary judgment may be granted in a contract dispute "when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning").

"Under New York law, it is well-settled that a party that is not named either as an insured or additional insured on the face of the insurance policy is not entitled to coverage." *Mikaelian*, 2016 WL 4702106, at *4; *see also Travelers Prop. Cas. Co. of Am. v. Netherlands Ins. Co.*, No. 21-CV-06061, 2023 WL 2339898, at *11 (S.D.N.Y. Mar. 1, 2023) (noting that "[a]n insurance policy is a contract between the insurer and the insured" and "[t]hus, the extent of coverage . . . is controlled by the relevant policy terms" (quotation omitted)); *Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 824 N.Y.S.2d 230, 232 (1st Dep't 2006). New York insurance law instructs that "when determining whether a third party is an additional insured under an insurance policy, a court must ascertain the intention of the parties to the policy, as determined from ***within the four corners of the policy itself.***" *See Cincinnati Ins. Co. v. Harleysville Ins. Co.*, 709 F. App'x 71, 74 (2d Cir. 2017) (alteration accepted) (quoting *77 Water St., Inc. v. JTC Painting & Decorating Corp.*, 50 N.Y.S.3d 471, 475 (2d Dep't 2017)). "The extent of coverage is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage." *Travelers Indem. Co. v. Trisura Specialty*

*Ins. Co.*, No. 22-CV-09900, 2024 WL 2882202, at *5 (S.D.N.Y. June 7, 2024) (alteration accepted) (quotation omitted).

"The party claiming insurance coverage bears the burden of proving entitlement." *Mikaelian*, 2016 WL 4702106, at *4 (collecting cases); *see also Colony Ins. Co. v. Sw. Marine & Gen. Ins. Co.*, No. 22-CV-01590, 2024 WL 1195401, at *7 (S.D.N.Y. Mar. 19, 2024).

### B.    57th Avenue Is Not an Additional Insured Under the AEIC Policies

57th Avenue is not an additional insured under the AEIC Policies and therefore, with respect to the Miller Action, Defendant has no duty to defend, indemnify, and/or provide coverage to 57th Avenue under the AEIC Policies.

The relevant language of the AEIC Policies is clear and unambiguous.  As set forth above, the Additional Insured Endorsement of the AEIC Policy extends additional insured coverage to the person or organization shown in the Schedule and the Schedule itself states that "[i]nformation required to complete this Schedule, if not shown above, will be shown in the Declarations."  *See* AEIC Policy at 84.

Here, 57th Avenue is not listed as an additional insured in the Schedule, *see* AEIC Policy at 84, or in the Declarations, *see* AEIC Policy at 4-8.[8]  Indeed, the Schedule is blank and the Declarations do not identify any additional insured.  *See* AEIC Policy at 4-8, 84.[9]

Accordingly, 57th Avenue does not qualify as an additional insured under the AEIC Policy and thus is not entitled to any coverage under the AEIC Policies.[10]  Defendant is therefore

---

[8]  57th Avenue is not listed *anywhere* in the AEIC Policies.  *See generally* AEIC Policy; AEIC Umbrella Policy.

[9]  Charles Ingber is referenced in the Declarations as "Mortgage/Loss Payable/Additional Interest," not as an additional insured.  *See* AEIC Policy at 4.

[10]  Even assuming *arguendo* that Plaintiff may assert reformation, Plaintiff's argument that the AEIC Policy should be reformed to identify 57th Avenue as the lessor of the Premises and an

entitled to summary judgment on all of Plaintiff's claims for declaratory judgment.  Defendant is also entitled to summary judgment on Defendant's counterclaim seeking a declaration that Defendant has no duty, under the AEIC Policies, to defend, indemnify, and/or provide additional insured coverage to 57th Avenue with respect to the claims asserted in the Miller Action.

### III.    21st Century Is Not Entitled to Insurance Coverage Under the Peleus Policy

Defendant seeks a declaration that the Peleus Policy affords coverage to 21st Century pursuant to the Lease.  *See* Def. Br. at 3-4; Answer at 11.

21st Century is not entitled to insurance coverage under the Peleus Policy.  The relevant language of the Peleus Policy is unambiguous and there is no genuine dispute that 21st Century is not named as an insured or additional insured under the Peleus Policy.  *See generally* Peleus Policy; *see also Morgan Stanley Grp. Inc.*, 225 F.3d at 275; *Palmieri*, 445 F.3d at 187; *Mikaelian*, 2016 WL 4702106, at *4.

The Peleus Policy identifies "Charles Ingber ETAL" as the "Named Insured."  *See* Peleus Policy at 7, 9.  The Peleus Policy does not provide additional insured coverage to any person or organization through an endorsement or otherwise.  *See generally* Peleus Policy.  Because 21st

---

additional insured pursuant to the terms of the Additional Insured Endorsement, *see* Pl. Br. at 10-11, is unpersuasive and reformation is not appropriate.  "In New York, insurance policies are reformed only when there is evidence of fraud or mutual mistake."  *Loomis v. ACE Am. Ins. Co.*, 91 F.4th 565, 573 (2d Cir. 2024); *see also NGM Ins. Co. v. 52 Liberty*, No. 09-CV-09003, 2010 WL 6501383, at *8 (S.D.N.Y. Dec. 6, 2010) (noting that "[u]nder New York law, reformation of a contract is warranted only in cases of mutual mistake – where the written agreement contradicts the intent of both parties – or in cases of fraud – where the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement"); *AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003).  Here, Plaintiff has not pointed to any evidence of  fraud.  Further, there is no evidence that the AEIC Policies, as written, contradict the intent of the parties to the AEIC Policies – Defendant and 21st Century.  Indeed, there is no evidence that the parties to the AEIC Policies intended for 57th Avenue to be named as an additional insured.

Century is not named either as an insured or additional insured on the face of the Peleus Policy, 21st Century is not entitled to coverage under the Peleus Policy.

Because the Peleus Policy does not afford coverage to 21st Century for the claims in the Miller Action, Plaintiff is entitled to summary judgment on Defendant's counterclaim seeking a declaration that the Peleus Policy affords coverage to 21st Century pursuant to the Lease.

## IV.    Reimbursement

Plaintiff seeks a declaration that Defendant is obligated to reimburse Plaintiff the reasonable amount of the fees, costs, and expenses incurred to defend 57th Avenue against the Miller Action.  *See* Pl. Br. at 16-17.  Plaintiff's request is premised on its argument that Defendant owes a duty to defend 57th Avenue against the Miller Action and that the AEIC Policy is primary to the Peleus Policy with respect to coverage for 57th Avenue.  *See* Pl. Br. at 16. Because the Court has determined that Defendant has no duty under the AEIC Policies to defend, indemnify, and/or provide additional insured coverage to 57th Avenue with respect to the claims asserted in the Miller Action, Plaintiff is not entitled to reimbursement for fees, costs, or expenses related to its defense of 57th Avenue in the Miller Action.  *See Netherlands Ins. Co. v. Selective Ins. Co. of Am.*, No. 14-CV-07132, 2016 WL 866348, at *8 (S.D.N.Y. Mar. 3, 2016).

## CONCLUSION

For the reasons set forth above, the Court declares that Defendant has no duty under the AEIC Policies to defend, indemnify, and/or provide additional insured coverage to 57th Avenue with respect to the claims asserted in the Miller Action.

As set forth above, Plaintiff's Motion for Partial Summary Judgment, ECF No. 29, is GRANTED in part and DENIED in part and Defendant's Cross-Motion for Summary Judgment, ECF No. 24, is GRANTED in part and DENIED in part.

The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

_/s/ Diane Gujarati_____
DIANE GUJARATI
United States District Judge

Dated: July 31, 2025
       Brooklyn, New York